# EXHIBIT A

# SETTLEMENT AGREEMENT

# BETWEEN THE UNITED STATES OF AMERICA,

# TAMMY ESTRADA AND RAMIRO ESTRADA, AND

# GERMANTOWN MUTUAL INSURANCE COMPANY

## I. INTRODUCTION

1. This settlement agreement ("Agreement") is entered into between Plaintiff the United States of America, Defendants Tammy Estrada and Ramiro Estrada ("Estradas"), and Intervenor Defendant Germantown Mutual Insurance Company ("GMIC") (collectively, the "Parties").

2. This Agreement resolves the claims and causes of action asserted by the United States' lawsuit, *United States v. Estrada*, No. 24-cv-1496, filed in the United States District Court for the Eastern District of Wisconsin on November 19, 2024, to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("FHA"), 42 U.S.C. §§ 3601-3631.

3. This Agreement also resolves any and all claims between GMIC and the Estradas, including but not limited to claims related to the insurance policy that exists between GMIC and the Estradas. For the avoidance of confusion, the Estradas understand and acknowledge that by executing this Agreement, in exchange for the payment made by GMIC, the Estradas shall have no coverage or claims under GMIC Insurance Policy 2037472 for any allegation in the Complaint filed in *United States v. Estrada*, No. 24-cv-1496.

1

4. The United States filed this action pursuant to 42 U.S.C. § 3612(o) on behalf of Ashlee Crosno and Michael Crosno (together, "Complainants").

5. The Complaint alleges that the Estradas, who were the Crosnos' landlords, violated the FHA by denying the Crosnos reasonable accommodations related to emotional support animals and retaliating against the Crosnos when they attempted to exercise their rights under the FHA, among other alleged violations.

6. The Estradas deny that they violated the FHA.

## II. STATEMENT OF CONSIDERATION

7. The Parties have agreed that the United States' claims against Defendants as well as any claims between GMIC and Defendants should be resolved amicably and without further litigation. Therefore, the Parties consent to the entry of this Agreement.

8. In consideration of, and consistent with, the terms of this Agreement, the Parties will move jointly for dismissal of *United States v. Estrada*, No. 24-cv-1496 and all claims contained therein. The Parties agree and acknowledge that this consideration is adequate and sufficient.

NOW, THEREFORE, the Parties agree as follows:

## III. DEFINITIONS

9. This Agreement's "effective date" is the date of the signature of the last signatory to this Agreement.

10. The "Subject Property" refers to 413 N. Bennett Street, Appleton, Wisconsin, 54914.

2

## IV. TERMS AND CONDITIONS

### A. General Non-discrimination Provisions

11. Defendants, their agents, employees, successors, and all other persons in active concert or participation with any of them, will comply with the FHA and shall not:

    a. Discriminate in the rental, or otherwise make unavailable or deny, a dwelling to a renter on the basis of disability, in violation of 42 U.S.C. § 3604(f)(1);

    b. Discriminate against a person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, on the basis of disability, in violation of 42 U.S.C. § 3604(f)(2);

    c. Refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a person equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B); and

    d. Coerce, intimidate, threaten, or interfere with a person in the exercise or enjoyment of, or on account of him or her having exercised or enjoyed, or on account of him or her having aided or encouraged any other person in the exercise or enjoyment of, a right granted or protected by 42 U.S.C. § 3604, in violation of 42 U.S.C. § 3617.

### B. Reasonable Accommodation Policy

12. Within thirty (30) days of the effective date of this Agreement, Defendants shall adopt the reasonable accommodation policy set forth in Appendix A (the "Reasonable

Accommodation Policy") and implement it for all requests for an assistance animal at the Subject Property and any other residential properties owned or operated by Defendants.

13. The Reasonable Accommodation Policy, once adopted, shall supersede all existing policies, procedures, and resolutions concerning or affecting approval of reasonable accommodations for assistance animals at the Subject Property.

### C. Mandatory Education and Training

14. Within sixty (60) days of the effective date of this Agreement, Defendants shall attend, at the Defendants' expense, a live training program regarding the Fair Housing Act, including in particular the FHA's prohibitions against disability discrimination. The training may be conducted virtually. The training shall be conducted by a qualified third party, approved at least 14 days in advance by the United States, and unconnected to Defendants, their employees, agents, or Counsel.

### D. Reporting and Recordkeeping

15. Defendants shall notify and provide documentation to the United States of the following events within fourteen (14) days of their occurrence:

   a. The adoption of the Reasonable Accommodation Policy, in accordance with Paragraph 12 of this Agreement;

   b. The completion of FHA training in accordance with Paragraph 14;

   c. The denial of a request for a reasonable accommodation by any person at the Subject Property, including the requester's name, address, and telephone number,

4

the date of the request, the details of the request, and the written explanation provided to the requestor for denying the request;

d. Any conditions proposed or imposed by Defendants on a tenant or prospective tenant who keeps or requests to keep an assistance animal at the Subject Property, including the resident's name, address, and telephone number, and the details of the request and the reason(s) for any proposed conditions; and

e. The making of any written or oral complaint against Defendants regarding discrimination on the basis of disability for failure to provide a reasonable accommodation, including a copy of the written complaint itself or a written summary of an oral complaint, and the name, address, and telephone number of the complainant. Defendants shall also promptly provide the United States with information concerning resolution of the complaint.

16. Defendants shall be responsible for the preparation of two annual compliance reports to be submitted (1) six months after the effective date of this Agreement and (2) eighteen months after the effective date of the Agreement. The compliance report shall include:

a. A list of all reasonable accommodation requests submitted to Defendants, including residents or prospective residents, since the effective date of this Agreement or the submission of the prior compliance report, including the name and contact information of the requestor, the address of the property for which the request was made, the date of the request, the nature of the request, and whether the request was granted or denied.

17. While this Agreement remains in effect, Defendants shall preserve all records relating to their obligations under this Agreement. Representatives of the United States shall be

5

permitted, upon providing reasonable notice to Defendants, to inspect and copy at reasonable times any and all records related to Defendants' obligations under this Agreement.

### E.  Relief for Complainants

18.  Within fourteen (14) days of the effective date of this Agreement, the Estradas and GMIC shall collectively pay the total sum of TWENTY THOUSAND DOLLARS ($20,000.00) to the Crosnos. The division of payments shall be as follows: (1) $15,000.00 by GMIC; and (2) $5,000.00 by the Estradas. The payments shall be made in a check payable to Ashlee Crosno and/or Michael Crosno and mailed via certified mail to the United States Attorney's Office for the Eastern District of Wisconsin 517 E Wisconsin Ave, Milwaukee, Wisconsin.

19. As a prerequisite to receiving payment pursuant to Paragraph 18, Complainants shall execute a release of all claims that they may have against Defendants for the FHA claims alleged in this action. The release shall take the form of Appendix C to this Agreement. The United States shall deliver the signed release to Counsel for Defendants and Counsel for GMIC.

20. This Agreement does not release any claims for practices not addressed in the Complaint that may be held or are currently under investigation by any other federal or state agency or entity.

21. As a condition of GMIC's payment, the Estradas agree to execute the Settlement Agreement and Release ("Insurance Coverage Release"), incorporated herein and attached hereto as Appendix D.

6

**F. Neutral Rental Reference**

22. Defendants agree to sign the rental reference letter included in Appendix B. They further agree that the Crosnos may provide the rental reference letter to prospective landlords or other prospective housing providers.

23. If Defendants are contacted by any person requesting information regarding the Crosnos' tenancy at the Subject Property, Defendants agree to provide only the letter included in Appendix B.

**G. Duration, Jurisdiction, and Scope**

24. This Agreement shall be in effect for a period of two (2) years from the effective date relative to the United States and the Estradas. The Insurance Coverage Release shall be binding upon execution and remain in effect forever, without qualification or condition and independent of other obligations of the Estradas imposed on them by this Agreement.

25. If the Estradas do not adhere to the terms of this Agreement and the Complaint is reopened or refiled, the Estradas agree that the Insurance Coverage Release shall operate and there shall be no defense of indemnification obligation by GMIC regarding that Complaint or disputes over this Agreement.

26. Upon execution of this Agreement, the Parties shall jointly move the Court for dismissal with prejudice of the underlying litigation. The joint motion will also ask that the Court make this dismissal effective twenty-one (21) days from the entry of its order, so that dismissal takes effect after the monetary payment required by Paragraph 18 has been made.

7

27. Any time limits for performance imposed by this Agreement may be extended by mutual written agreement of the Parties.

28. Defendants will cooperate fully with the United States' efforts to monitor compliance with this Agreement by making policies, records including complaints, personnel, and any other reasonably requested information available to the United States.

29. If the United States believes that Defendants have failed to comply timely with any requirement of this Agreement, or that any requirement has been violated, the United States will notify Defendants in writing and the Parties will try in good faith to resolve the issue. The Parties will negotiate in good faith to resolve informally any differences regarding interpretation or compliance with this Agreement prior to initiating court action. If the United States believes that Defendants have failed to perform in a timely manner any act or term required by this Agreement, the United States will notify Defendants in writing of its concerns. Defendants will have 14 days from the date of notification to cure the alleged breach.

30. If the Parties are unable to reach a resolution within 30 days, the United States may sue for breach of this Agreement, or any provision of it, in the United States District Court for the Eastern District of Wisconsin. In any action filed under this Paragraph, Defendants agree not to contest the exercise of personal jurisdiction over it by this Court and not to raise any challenge on the basis of venue.

31. If the United States sues for breach of this Agreement as contemplated by Paragraph 30 above, the United States may seek, and the Court may grant as relief, any or all of the following: l) an order mandating specific performance of any term or provision in this Agreement, regardless of whether monetary relief would be adequate; 2) an award of

reasonable attorneys' fees and costs incurred in bringing an action to remedy breach of this Agreement; and 3) any other relief that may be authorized by law or equity.

32. Failure by the United States to enforce any provision of this Agreement shall not operate as a waiver of the United States' right or ability to enforce any other provision of this Agreement.

33. All documents and communications required to be sent to the United States under this Agreement will be sent by email to Nia Schmaltz (nia.schmaltz@usdoj.gov).

34. The provisions of this Agreement shall apply to Defendants, their officers, agents, employees, successors, and assigns.


## H. Execution

35. Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

36. This Agreement, including Appendices A through D, constitutes the complete agreement among the Parties. No prior or contemporaneous communications, oral or written, or prior drafts shall be relevant or admissible for purposes of determining the meaning of any provision herein or in any other proceeding.

37. This Agreement is governed by and shall be interpreted under the laws of the United States.

38. The undersigned represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons indicated below.

39. Except where this Agreement expressly conditions or predicates performance of a duty or obligation upon the performance of a duty or obligation by another Party, the

performance of one Party's duties or obligations under this Agreement shall not be discharged or excused by the actual or alleged breach of the duties and obligations by another Party.

40. This Agreement is a public document. All Parties consent to the United States' disclosure of this Agreement and information about this Agreement, to the public.

41. Should any provision of this Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement.

42. The Parties agree that they will not, individually or in combination with another, seek to have any court declare or determine that any provision of this Agreement is illegal or invalid.

43. The Parties agree that they will defend this Agreement against any challenge by any third party. In the event that this Agreement or any of its terms are challenged by a third party in a court other than the United States District Court for the Eastern District of Wisconsin, the Parties agree that they will seek removal and/or transfer to the United States District Court for the Eastern District of Wisconsin.

44. This Agreement may be modified only with the written consent of the Parties. Any modifications must be in writing and signed by the Parties through their authorized representatives.

45. All Parties shall be responsible for their own attorney's fees and costs associated with this action.

10

SIGNATURES

**FOR THE UNITED STATES OF AMERICA**

RICHARD G. FROHLING
Acting United States Attorney

By: *Niabi Schmaltz*         Date: 08/20/2025
NIABI K. SCHMALTZ
Assistant United States Attorney
Office of the United States Attorney
Eastern District of Wisconsin
Wisconsin Bar No. 1104724


**FOR TAMMY ESTRADA**

Date: **8-22-2025**
By:  TAMMY ESTRADA


**FOR RAMIRO ESTRADA**



Date:  **8-22-2025**
By:     RAMIRO ESTRADA


**FOR GERMANTOWN MUTUAL INSURANCE COMPANY**

     */s/ Kevin T. White*            08/22/2025
By: _____ Date: _____
KEVIN T. WHITE
Levy & Levy SC.
Wisconsin Bar No. 1067868

11

**APPENDIX A**

**Assistance Animal
Reasonable Accommodation Policy**

The Federal Fair Housing Act and other state and local fair housing laws require that housing owners and managers provide reasonable accommodations for applicants and residents who have disabilities. Tammy Estrada and Ramiro Estrada (the "Estradas"), and their employees, agents, and designees, are committed to granting reasonable accommodations when necessary to afford persons with disabilities the equal opportunity to use and enjoy a dwelling owned or operated by the Estradas

Reasonable accommodations may include waiving or varying rules or policies to allow a resident with a disability to keep an "assistance animal." An assistance animal is an animal that does work or performs tasks for the benefit of a person with a disability or provides emotional support or other assistance that may be necessary to afford the person an equal opportunity to use and enjoy housing ("Assistance Animal"). The most common Assistance Animals are dogs, although other animals may qualify as assistance animals. Assistance Animals are not considered "pets" under our policies. We recognize the importance of Assistance Animals and are committed to ensuring that our tenants with Assistance Animals – whether owners, occupants, or renters – may keep them in their units.[1]

If an applicant or resident with a disability requests a reasonable accommodation for an Assistance Animal, we will determine whether the animal may be necessary to afford the resident an equal opportunity to enjoy property owned or operated by the Estradas. In some cases, both the disability and the necessity for the Assistance Animal are obvious – for example, a dog guiding an individual who is blind or has low vision, or a dog pulling the wheelchair of a person with a mobility disability. If this is the case, no further inquiry will be made, and we will grant the resident the accommodation unless the presence of the animal (1) imposes an undue financial and administrative burden; (2) fundamentally alters the nature of our operations; or (3) would pose a direct threat to the health and safety of other people.

In the case of an applicant or resident who requests a reasonable accommodation for an Assistance Animal and the disability of the applicant or resident and/or the necessity for the Assistance Animal is not obvious, we may require a written verification from a Health or Social Service Professional[2] indicating that the applicant

---

[1] Additionally, a tenant may have a visitor with a disability, who is otherwise lawfully permitted on the property, visit the property with their service animal as defined by 28 C.F.R. § 35.104.

[2] "Health or Social Service Professional" means a person who provides medical care, therapy or counseling to persons with disabilities, including, but not limited to, doctors, physician assistants, psychiatrists, psychologists, or social workers. The Health or Social Service Professional should have personal knowledge of their patient/client – i.e., the knowledge used to

has a disability[3] and the presence of the animal may be necessary to provide the applicant or resident an equal opportunity to use and enjoy his/her apartment. In the event that an applicant or resident requests a reasonable accommodation to own more than one assistance animal, our company may ask in the verification if there is a separate disability, or separate disability-related need to own more than one assistance animal for the same requesting individual.

The tenant, prospective tenant, or anyone else included on the Residential Lease Agreement must comply with relevant state and local laws regarding animal licensing and vaccination. *See, e.g.*, Wis. Stat. § 174.07(1) (requiring a license for "the keeping of a dog over 5 months of age"); City of Appleton, Wis., Municipal Code § 3-66(a) ("Any person owning, keeping, harboring or having custody of any dog or cat over five (5) months of age within the City must obtain a license as provided in this division."); City of Appleton, Wis., Municipal Code § 3-18(a) ("The owner of a dog, cat or ferret shall have the animal vaccinated by a veterinarian at not later than five (5) months of age; or, if an owner obtains or brings an animal into the City that has reached five (5) months of age, unless that animal has been vaccinated[.]"). Failure to do so may be grounds for terminating the rental agreement. Upon request, the tenant or prospective tenant must provide us with proof of compliance with these laws.

Upon request, the applicant or resident must also provide the Property Owners with a description of any Assistance Animal to be brought onto the rental property, including the breed, along with a photograph of the animal.

> We will not require:

> i.      That the Assistance Animal have any special training or certification;

> ii.     That the Assistance Animal be subject to breed or weight restrictions;

> iii.    That the Assistance Animal be required to wear a vest or other insignia that identifies it as an Assistance Animal; or

> iv.     That the resident pay any fee, deposit, or other charge for keeping the animal, or obtain insurance as a condition of keeping the animal.

If we seek verification of a tenant's disability and the need for an Assistance Animal, we will not:

> i.      Request whether a Health or Social Service Professional would be willing to testify in a court proceeding regarding the request for accommodation;

---

diagnose, advise, counsel, treat, or provide health care or other disability-related services to their patient/client.

[3] Under fair housing laws, a person with a disability is defined as a person who has a physical or mental impairment that substantially limits one or more major life activities, is regarded as having such an impairment, or has a record of such an impairment.

13

ii.      Require the Health or Social Service Professional to provide a curriculum vitae; or

iii.     Require an interview with the Health or Social Service Professional.

In processing requests for Assistance Animals, we will take reasonable measures to protect the confidentiality of any information or documentation disclosed in connection with the requests. Such measures may include limiting access to such information to persons specifically designated to deal with requests for reasonable accommodations, who will disclose information only to the extent necessary to determine whether to grant the request, and keeping all written requests and accompanying documentation in a secure area, including the tenant file, if tenant files are kept in a secure area to which only those designated persons have access, except as otherwise required by law. We may keep in our computer records or other reports information that an animal has been approved for the household.

A person with a disability may request a reasonable accommodation orally, but we may ask the person with the disability to complete or assist in completing a "Form to Request an Assistance Animal" (attached to this Policy). We will evaluate the requested accommodation regardless of whether the person completes the written form, but the person must cooperate in providing all information needed to complete the form.

If the applicant requires assistance in completing the form, the Property Owner, Property Manager, sale or leasing agent, or his or her designee will provide assistance or will fill out the form based on a request. We are using the form to record reasonable accommodation requests so that we can obtain only the information necessary to make a reasonable accommodation decision and not to obtain confidential information that we do not need to make a reasonable accommodation decision.

Once we receive the request for an assistance animal and, if applicable, additional verifying information, we will provide a response within 14 days. If a request is denied, an explanation for the denial will be included in the written notification of denial. If a person with a disability believes that a request has been denied unlawfully or that the response is delayed unreasonably, he or she may file a complaint with:

U.S. Department of Housing and Urban Development
Office of Fair Housing and Equal Opportunity
451 Seventh Street, SW
Washington, DC 20410
(800) 669-9777
http://portal.hud.gov/hudportal/HUD?src=/program_offices/fair_housing_equal_opp/online-complaint
United States Attorney's Office for the Eastern District of Wisconsin
517 E Wisconsin Ave Ste 530
Milwaukee, Wisconsin 53202
Attn: Nia Schmaltz

14

15

## FORM TO REQUEST AN ASSISTANCE ANIMAL

The Federal Fair Housing Act and other state and local fair housing laws require that housing owners and managers provide reasonable accommodations for applicants and residents who have disabilities. We and our employees, agents, and designees are committed to granting reasonable accommodations when necessary to afford persons with disabilities the equal opportunity to use and enjoy a dwelling owned by the Estradas.

Under fair housing laws, a person is entitled to a reasonable accommodation if he or she has a disability that is defined as a physical or mental impairment that substantially limits one or more major life activities. The person also must show that he or she may need the accommodation because of the disability. Reasonable accommodations may include waiving or varying rules or policies to allow a resident to keep an assistance animal. An assistance animal is an animal that does work or performs tasks for the benefit of a person with a disability or provides emotional support or other assistance that may be necessary to afford the person an equal opportunity to use and enjoy housing ("Assistance Animal").

If you or anyone included on the Residential Lease Agreement, and any of their minor children, has a disability and you believe that there is a need for an Assistance Animal as a reasonable accommodation for the person with a disability to use and enjoy a dwelling unit at our property, please complete this form and return it to us. Please check all items that apply and answer all questions in Part 1 of this Form. If you have a disability that is obvious, and the need to own an assistance animal is obvious (such as a seeing eye dog), we will approve the request without seeking third-party verification.

If the disability is not obvious, or the need for an assistance animal is not obvious, we will ask that you complete Part 2 of this form identifying a health care or social service professional ("Provider") that has provided health care, therapy, or counseling to the applicant with a disability or resident seeking accommodation so that we may seek third-party verification. To ensure that this verification comes from the Provider and has not been altered or changed, Part 2 also asks for the name and address or email of the Provider and requests your consent to allow the Provider to answer certain questions regarding your animal request. If applicable, we will mail or email the request to the Provider within three days of receiving this form and your consent in Part B. In most cases we will be able to respond to this request in writing within 14 days of receiving the request for an assistance animal and, if applicable, the verification from the Provider. Completion of the form by a Provider is not required for approval; the Provider may provide the information requested in another format. All information provided to us in connection with this request will be kept confidential, except as otherwise required by law. If you require assistance in completing this form, please contact us for assistance or to make an oral request for a reasonable accommodation.

16

## PART 1: QUESTIONS FOR REQUESTOR

1.      Do you require assistance filling out this form?

□ Yes   □ No

If your answer is "Yes," and you do not have someone who can assist you, please ask your landlord to assist you in filling out this form.

If your answer is "No," continue on to Question No. 2.

2.      Today's Date:

_____

3.      I am (please check one):

_____ **The person who has a disability and is requesting an Assistance Animal**.  If so, continue to Question 4.

_____ **A person making a request on behalf of or assisting the person with a disability** who needs an Assistance Animal.  Please fill out the information below:

Name of person filling out form:

_____

Address:

_____

Telephone number:

_____

Relationship to person needing Assistance Animal:_____

4.      Name of person with a disability for whom a reasonable accommodation is being requested:

_____

_____

Phone number:

_____

Address:

_____

17

5.    Identify the species of animal for which you are making a reasonable accommodation request, e.g., "dog," "cat":

_____
_____

6.    Provide the name and physical description (size, color, weight, any tag and/or license) of the animal for which you are making a reasonable accommodation request:_

_____
_____

_____

_____


_____          _____
Signature of person making request                    Date


_____          _____
Signature of person with disability                       Date


_____
Name of minor with a disability (if applicable)

## **PART 2: CONSENT AND RELEASE FOR INFORMATION**

By my signature below, my health care or social service professional is authorized to provide the information requested on the next page of this form about me, or about the minor child.

_____

Print Name                                                    Date

If information is requested for a minor, print minor's name below

_____

Minor's Name                                                  Date

_____

Name of Provider

_____

Address for Health or Social Service Professional

_____

Telephone number for Health or Social Service Professional

_____

Email for Health or Social Service Professional

_____

Signature of applicant, resident, or adult guardian

19

***TO BE COMPLETED BY THE PHYSICIAN, PSYCHIATRIST, OR OTHER HEALTH
OR SOCIAL SERVICE PROFESSIONAL:***

1. Please provide a statement verifying that the person has an impairment that substantially
limits one or more of the person's major life activities.

_____
_____

_____
_____

_____
_____

2. Please state whether the animal is necessary for the person to have an equal
opportunity to use and enjoy housing or alleviate one or more of the effects of the
person's disability. If so, please explain how it helps.

_____
_____

_____
_____

_____
_____

_____
_____

Name: _____

Profession (physician, social worker, etc.): _____

Business Address: _____

Business Telephone: _____


_____  _____
Signature                                                      Date

**APPENDIX B**

20

To whom it may concern:

We, Tammy Estrada and Ramiro Estrada, provide this letter as a rental reference letter for Ashlee Ann Crosno and Michael Crosno. From 2015 until September of 2023, the Crosnos resided at 413 N. Bennett Street, Appleton, Wisconsin, 54914. During that time, we owned the property and were the Cronos' landlords. At the end of their tenancy, the Crosnos' rent was $740 per month.

Best,

**8-22-2025**

**8-22-2025**

Tammy Estrada & Ramiro Estrada

**APPENDIX C**

**Release**

In consideration of the Settlement Agreement entered in *United States v. Estrada*, No. 24-cv-1496, ECF No. 1 (E.D. Wis.) (the "action") and of the payment of the total sum of $20,000 to us pursuant to that Settlement Agreement, we, Ashlee Crosno and Michael Crosno, hereby release Tammy Estrada, Ramiro Estrada, and Germantown Mutual Insurance Company, and their subsidiaries, affiliates, officers, directors, shareholders, members, agents, employees, successors and assigns (the "Released Parties") from any and all liability for any claims, legal or equitable, we may have against the Released Parties arising out of the Fair Housing Act claims alleged in the action, as of the date of the entry of the Settlement Agreement. We hereby acknowledge that we have read and understand this release and have executed it freely and voluntarily and with full knowledge of its legal consequences.

Dated: _____       _____
                              Ashlee Crosno

Dated: _____       _____
                              Michael Crosno

## APPENDIX D

### SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("this Agreement") is entered and effective as of the date of the last signature, by and between the following parties (each individually, a "Party"; all collectively, the "Parties"):

- Tammy and Ramiro Estrada ("Estradas"); and

- Germantown Mutual Insurance Company ("Germantown");

WHEREAS, the Estradas and Germantown, and others, are parties in the civil lawsuit known as *United States v. Estrada*, No. 24-cv-1496, filed in the United States District Court for the Eastern District of Wisconsin on November 19, 2024 (the "Lawsuit");

WHEREAS, various parties have asserted claims, including but not limited to claims of violation of the Fair Housing Act ("FHA") resulting in alleged damages and injuries for which various relief is sought, including, but not limited to injunctive relief, declaratory judgment claims, money, punitive damages, attorney fees, costs, disbursements, and interest, and other relief against the Estradas and via them, potentially Germantown, or others having a contractual or other relationship, as alleged in the Complaint in the Lawsuit (the "Claims");

WHEREAS, Germantown issued a policy, 2037472, to the Estradas, which may or may not provide coverage to them or others for the Claims in the Lawsuit ("Policy");

WHEREAS, Germantown has hired an attorney to defend the merits of the Claims while it hired a separate attorney to intervene in the Lawsuit, to bifurcate the coverage issues from the merits, and stay the merits until such a time as the coverage issues are decided, which was granted ("Insurance Coverage Claims");

WHEREAS, Estradas and Germantown each dispute all claims asserted against them in the Lawsuit, including all allegations regarding wrongdoing, liability, injuries, and damages and coverage therefor;

WHEREAS, the Parties desire to settle all claims and disputes relating to the Lawsuit they may have between each other, in their entirety, including, but not limited to all Claims and Insurance Coverage Claims, whether known or unknown, as well as all other actual and potential demands, complaints, claims, and causes of action among and between them or alleged to be responsible by them by a third-party, including parties including any party in the Lawsuit, including but not limited to all demands, complaints, claims, and causes of action for any amount whatsoever, including but not limited to damages, attorney fees, costs, disbursements, or interest, by and between the Parties and their respective successors, assigns, insurers, and attorneys (collectively, including the Parties, the "Released Parties") relating in whole or in any part to any past,

present, or ongoing action or omission, investigation, transaction, property condition, litigation, event, or occurrence arising from or pertaining to the Claims or Lawsuit, regardless of whether or to what extent such demands, complaints, claims, and causes of action have been or could have been asserted in the Claims or Lawsuit, whether arising in contract, tort, equity or otherwise,

WHEREAS, Estradas understand and acknowledge that by entering into this Agreement, all rights under the Policy related to the Claims and Lawsuit are being waived and released and Germantown will have no duty whatsoever to defend them against the Claims or in the lawsuit, nor shall Germantown have any duty to indemnify them for any damages, awards or other amounts they may end up being responsible for as a result of the Claims and Lawsuit;

NOW, THEREFORE, in consideration of the mutual promises and agreements by and between the Parties, and other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the Parties agree to all of the foregoing and following:

1. *Payment.* Within Fifteen (15) calendar days following the full execution of this Agreement, whichever is later, Germantown shall pay to the United States of America a payment of Fifteen Thousand and 00/100 Dollars ($15,000.00), payable to Ashlee and Michael Crosno, and delivered to the United States Attorney's office for the Eastern District.

2. *Waiver and Release.* Effective immediately upon receipt of the payment described in paragraph 1 above, the Estradas, together with any other entities, subsidiaries, parent companies, agents, or other related entities or parties, shall waive and release all claims  in the Lawsuit, including, but not limited to Insurance Coverage Claims, whether known or unknown, as well as all other actual and potential demands, complaints, claims, and causes of action, including all demands, complaints, claims, and causes of action for any attorney fees, costs, disbursements, reimbursement, or interest, against Germantown relating in whole or in any part to the Claims and Lawsuit, and any past, present, or ongoing action or omission, marketing, representation, communication, investigation, transaction, transfer, property condition, litigation, affair, event, insurance coverage dispute, or occurrence arising from or pertaining to the Claims, Lawsuit or Insurance Coverage Claims, whether pled in this Lawsuit or not, whether arising in contract, tort, or otherwise. This waiver and release shall apply and be effective and enforceable regardless of whether or to what extent such demands, complaints, claims, and causes of action have been or could have been asserted via the Insurance Coverage Claims, Claims, or the Lawsuit; regardless of whether or to what extent such demands, complaints, claims, or causes of action presently are known or unknown by any Party individually or by the Parties collectively; regardless of whether and to what extent such demands, complaints, claims, and causes of action presently are accrued or unaccrued; regardless of theory of wrongdoing, liability, injury, or damage threatened, asserted, claimed, or found; and regardless of court, agency, arbitrator, mediator,

24

or other forum, venue, or jurisdiction. The Estradas understand and acknowledge that by entering into this Agreement, all rights under the Policy relating to the Claims, Lawsuit and Insurance Coverage Claims are being waived and released and Germantown will have no duty whatsoever to defend them against the Claims or in the Lawsuit, nor shall Germantown have any duty to indemnify them for any damages, awards or other amounts they may end up being responsible for as a result of the Claims and Lawsuit.

3. *Dismissal of Insurance Coverage Claims*. Within ten (10) calendar days following receipt of the payment described in paragraph 1 above, the Parties shall execute and file in the Lawsuit a stipulation and proposed order to dismiss the Insurance Coverage Claims in their entirety and Germantown as a party, with prejudice and without attorney fees, costs, or disbursements assessed against any Party, and any other documents necessary to effect such dismissal.

4. *No Assignment or Transfer; Full Authority*. The Parties represent and warrant that they have not assigned or transferred to any person or entity any of the rights or remedies, including any of the demands, complaints, claims, or causes of action, waived and released in this Agreement. The Parties further represent and warrant that they are the sole holders of the rights and remedies waived and released in this Agreement and that no other parties have any rights or authority to release or waive the claims discussed herein and specifically represent and warrant that they have the authority to act on behalf of themselves and if they are operating as a company they are the members and/or owners of those companies.

5. *No Admission of Liability.* This Agreement settles disputed demands, complaints, claims, and causes of action, and shall not be construed as an admission of fault or liability by any of the Released Parties. No Party admits any demand, complaint, claim, or cause of action asserted against it in relation to the Claims, the Insurance Coverage Claims, or the Lawsuit, including any allegation regarding wrongdoing, liability, injuries, or damages.

6. *Heirs, Successors, and Assigns*. This Agreement shall be binding on and inure to the benefit of the Parties and the Parties' respective heirs, successors, and assigns.

7. *Representation by and Reliance upon Counsel*. The Parties have had an opportunity to retain and consult independent counsel to review and negotiate this Agreement. Whether the Parties in fact have chosen to retain and consult independent counsel to review and negotiate this Agreement shall have no bearing on the construction or enforceability of this Agreement.

8. *Interpretation.* This Agreement is the result of negotiations by and between the Parties. If any dispute regarding the interpretation of this Agreement arises, no Party shall be deemed the drafter of this Agreement for purposes of construing any ambiguity.

25

9. *Waiver of Breaches.* No waiver of any breach of this Agreement shall be deemed a continuing waiver of that breach or a waiver of any other breach of this Agreement.

10. *Choice of Law*. This Agreement shall be construed and governed by the laws of the State of Wisconsin.

11. *Integration.* This Agreement states and constitutes the entire agreement by and between the Parties with respect to its subject matter, and supersedes all prior and contemporaneous representations, negotiations, and agreements by and between the Parties with respect to that subject matter.

12. *Amendments and Modifications.* This Agreement may not be amended or modified in any manner except by written agreement of the Parties, executed by each of the Parties after the full execution of this Agreement.

13. *Counterparts.* This Agreement may be executed in one or more counterparts, each of which shall be deemed an original.

14. *Policy remains in effect*. All insurance policies between the Parties remain in effect. For the avoidance of doubt, this Agreement only releases claims and disputes related to the Lawsuit and Insurance Coverage Claims related to the Lawsuit.

[SIGNATURES ON NEXT PAGE]

26

BY SIGNING BELOW, I REPRESENT AND WARRANT ALL OF THE FOLLOWING:

a. I have read, understand, and agree to this Agreement in its entirety;

b. I am authorized to execute this Agreement on behalf of the Party or Parties for which my signature appears; and

c. I freely and voluntarily execute this Agreement on behalf of the Party or Parties for which my signature appears.

**TAMMY ESTRADA**

**8-22-2025**

Tammy Estrada                                              Date

**RAMIRO ESTRADA**

Ramiro Estrada                                              Date 8-22-2025

**GERMANTOWN MUTUAL INSURANCE COMPANY**

[see attached page]
_____  _____

_____
_____, Authorized Representative          Date

**END OF DOCUMENT**

27

BY SIGNING BELOW, I REPRESENT AND WARRANT ALL OF THE FOLLOWING:

a. I have read, understand, and agree to this Agreement in its entirety;

b. I am authorized to execute this Agreement on behalf of the Party or Parties for which my signature appears; and

c. I freely and voluntarily execute this Agreement on behalf of the Party or Parties for which my signature appears.

**TAMMY ESTRADA**

_____     _____
Tammy Estrada                                                    Date

**RAMIRO ESTRADA**

_____     _____
Ramiro Estrada                                                    Date

**GERMANTOWN MUTUAL INSURANCE COMPANY**

_Jodi A Kolda_
_Jodi A Kolda_, Authorized Representative          8/20/2025
                                                                      Date

**END OF DOCUMENT**